IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02176-PAB

FELICIA M. PEREZ, on behalf of ASHTON J. MEDINA,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER OF REMAND**

---

This matter is before the court on plaintiff Felicia M. Perez's Complaint [Docket No. 3], filed on October 8, 2008. Plaintiff seeks review of defendant Michael J. Astrue's (the "Commissioner") final decision that her son, Ashton J. Medina, is not disabled and, therefore, does not qualify for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381-1383c. For the reasons set forth below, the Court reverses the Commissioner's final decision and remands the case for further proceedings.

**I. BACKGROUND**

    **A. Scope of Review**

The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). On July 31, 2009, the Court held a hearing in this matter, in which the Court ordered the parties to submit supplemental briefing addressing, among other things, whether or not plaintiff waived the issue of whether the Administrative Law

Judge ("ALJ") erred in deciding that plaintiff's son does not have a marked limitation in the domain of interacting and relating with others by plaintiff's failure to raise that issue in her opening brief; and, assuming this issue was waived, whether the Court nonetheless retains discretion to consider it. The Court has reviewed the supplemental briefs submitted by the parties and concludes that it is appropriate to review whether substantial evidence supports the Commissioner's findings as to Ashton's limitations in the domain of interacting and relating with others.

As the parties note in their supplemental briefing, "waiver principles developed in other litigation contexts are equally applicable to social security cases." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996). Thus, absent "compelling reasons," the Tenth Circuit will not consider arguments that were not presented to the district court. *Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994). This rule applies with equal force in these proceedings, since this Court sits in an appellate review capacity when hearing social security appeals. *See Berna*, 101 F.3d at 634; *Crow*, 40 F.3d at 324.

As the Commissioner recognizes, however, the waiver rule is tempered in some circumstances. "Although a litigant's failure to raise an argument before the district court generally results in forfeiture on appeal, forfeiture is not jurisdictional." *United States v. Jarvis*, 499 F.3d 1196, 1201 (10th Cir. 2007). Therefore, the Court may, in its sound discretion, address an argument despite a litigant's failure to raise it. *Id.* at 1202. The exercise of such discretion is appropriate "where the proper resolution is beyond any doubt or where injustice might otherwise result." *Id.* The Tenth Circuit "has recognized an exception where the argument involves a pure matter of law and the

proper resolution of the issue is certain." *Id.* The Tenth Circuit has thus reviewed arguments otherwise waived in a number of situations "because no additional findings of fact or presentation of evidence were required for the issue's disposition and both parties had the opportunity to address the issue in their appellate briefing." *Id.*

The Court concludes that the waiver rule should not preclude the Court's review of the ALJ's findings with respect to the domain of interacting and relating with others. Whether the ALJ's decision on that issue was supported by substantial evidence presents a legal question. No additional factual findings or evidence are necessary for the Court to determine whether the ALJ's decision comports with the substantial evidence standard; the ALJ's decision is final, and the administrative record is complete. Moreover, because the Court directed the parties to address whether the substantial evidence standard was met with respect to the ALJ's finding in the domain of interacting and relating with others, both parties have had a chance to address the issue in their briefing. The Court concludes that review of the issue advances the interests of justice because, as detailed below, the ALJ did not adequately consider Ashton's speech impairment when assessing the domains of (1) acquiring and using information and (2) interacting and relating with others. If the ALJ concludes, after considering all relevant evidence and applying the appropriate legal standards, that Ashton has marked limitations in both of these domains, then an award of benefits will be in order. Denying the possibility of an award on procedural grounds where the issue has now been raised and briefed would not comport with the ends of justice.

### B.  Procedural Posture

On September 17, 2004, plaintiff filed an application on behalf of her son for supplemental security income pursuant to Title XVI of the Act.  R. 24.  Ashton was approximately two months old at that time.  R. 67.  Plaintiff's claim was initially denied on April 4, 2005.  *Id.*  Following plaintiff's timely request for a hearing, on September 6, 2006, an ALJ assigned to the matter held a hearing on plaintiff's application.  R. 24.  After the ALJ issued an unfavorable decision on October 6, 2006, plaintiff filed a request for Review before the Appeals Council.  Plaintiff submitted additional evidence to the Appeals Council, including a speech/language report dated February 8, 2007.  R. 11.  The Appeals Council made this additional evidence part of the record.  R. 9.  On August 27, 2008, the Appeals Council denied plaintiff's request for review.  R. 6-8.  The ALJ's October 6, 2006 decision thus became the final decision of the Commissioner.

### C.  Factual Background

On August 24, 2004, Dr. Clifford A. Bloch diagnosed Ashton with partial DiGeorge syndrome based on a finding that Ashton exhibits deletion of part of chromosome 22.  R. 139.  Dr. Ganapathy Bala similarly diagnosed Ashton with DiGeorge syndrome on September 1, 2004.  R. 263.  Dr. Bala noted that "DiGeorge syndrome represents a spectrum of disease, varying from mild to severe," and that children exhibiting this syndrome may "have developmental delay, mental retardation, palatal dysfunction and swallowing defects."  *Id.*  In a September 13, 2004 letter, Dr. Bala advised that "[c]lose watch needs to be kept on [Ashton's] developmental status and watch for speech and swallowing defects."  R. 261.  After conducting a genetic

evaluation of Ashton on October 19, 2004, Dr. David K. Manchester confirmed Ashton's diagnosis of DiGeorge syndrome and noted that Ashton appeared alert and appropriate, had an intact palate, but had some difficulty swallowing. R. 143.

On December 6, 2005, Jenise Trotter, a speech language pathologist, and Bev Evers, an early intervention specialist, evaluated Ashton, who was 16 months old at the time. Their report indicates that Ashton had "a small cleft in his soft palate . . . which has affected his feeding causing him to cough or choke at times and which may cause some speech production problems." R. 269. Ms. Trotter and Ms. Evers found that Ashton's cognitive skills were at a 15 to 18 month level, while his language skills were at a 9 to 12 month level. Regarding speech, they noted that he did not babble often, had not been heard using certain consonant sounds, and often used gestures to indicate needs. Overall, the 16 month evaluation indicated that Ashton showed age appropriate skills in self help, social, and cognitive areas, but continued "to exhibit a moderate delay in language skills." R. 270. Dr. Bloch saw Ashton on December 21, 2005 and noted that Ashton was growing well and his neurodevelopment was "progressing well, although delayed, especially with speech and fine motor." R. 316. Dr. Bloch next examined Ashton on March 2006, and again noted that Ashton's neurodevelopment was "progressing well, although delayed, especially with speech." R. 315.

Bev Evers and Janise Trotter evaluated Ashton again on July 13, 2006. R. 456. This 24 month evaluation notes that Ashton had received early intervention services for nearly two years, and currently had weekly visits from a speech/language therapist. *Id.* The report also states that Ashton's mother and other family members had been "very

dependable in following through with recommendations" during Ashton's treatment program.  *Id.*  At 24 months, the evaluators found that Ashton had "[s]ome [language] skills at the 12 to 18 month level," with "higher receptive language skills than expressive."  *Id.*  The report states that "[e]xpressively, [Ashton's] language skills are more delayed," and notes that Ashton vocalized sounds such as "uh" and "ooh" and said "ma," "dad," "na," "pa," and "nah."  *Id.*  At that time, Ashton continued "to exhibit an open mouth posture with some drooling."  *Id.*  Overall, the report attributes age appropriate developmental scores in social and cognitive areas to Ashton, while finding his oral motor skills and language skills delayed.  *Id.*

The record submitted to the Appeals Council by plaintiff included a speech/language report from February 8, 2007.  R. 478-79.  Ashton was 31 months old at that time.  In this report, Ms. Trotter ranked Ashton's language skills in the second percentile for his age.  *Id.* at 478.  This equates to skills equivalent to a 20 month old.  Ashton's expressive language skills were lower than this average, approximating the skills of a 17 month old.  *Id.*  His auditory comprehension was assessed as equivalent to the skills of a normal 23 month old child.  *Id.*  Ms. Trotter noted that Ashton was "not yet producing a variety of consonant-vowel combinations, jargon speech, naming objects in photos, asking questions or use[ing] words more than gestures to communicate.  *Id.*  In summary, Ms. Trotter stated that "Ashton exhibited a significant delay in language and phonology skills."  *Id.* at 479.

At the hearing held by the ALJ on September 6, 2006, plaintiff testified that Ashton has "a big hole in the top of his mouth" that prevents Ashton from pronouncing

sounds beginning with the letters c, t, s, e, g, h, j, y, v, w, and x.  R. 499.  As to Ashton's current speech abilities, plaintiff testified that Ashton yells and gets frustrated when trying to communicate.  R. 499-500.  Plaintiff testified that Ashton had a speech therapist and a physical therapist and that his therapists informed plaintiff that Ashton will require special needs accommodations at school as well as continued therapy.  R. 500-01.

## II.  ANALYSIS

### A.  Standard of Review

The Court reviews an ALJ's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards.  *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  "Under the Social Security Act, the claimant has the burden of proving a disability."  *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).  On the other

hand, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Id.*

### B.  Child Disability Standard

A child under the age of eighteen is disabled within the meaning of the Social Security Act if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner has established a three-step sequential evaluation process to determine whether a child claimant is disabled.  20 C.F.R. § 416.924(a); *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001).  Under this test, a child is disabled if (1) the child is not engaged in substantial gainful activity; (2) the child has an impairment or combination of impairments that is severe; (3) the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404.  20 C.F.R. § 416.924(a); *Briggs*, 248 F.3d at 1237.

"In making the third determination – whether a child's impairment meets or equals a listed impairment – the ALJ must consider whether the impairment, alone or in combination with another impairment, medically equals, or functionally equals the listings." *Briggs*, 248 F.3d at 1237 (internal quotation marks omitted).  A child's impairment or combination of impairments functionally equals the listings and, thus, constitutes a disability under the Act, when it results in "marked" limitations in two

domains or an "extreme" limitation in one domain, as described under the relevant regulation, 20 C.F.R. § 416.926a.

The issues raised in plaintiff's appeal concern the ALJ's analysis of how Ashton functions in light of his impairments. Under the relevant regulation, the Commissioner assesses how a child functions in his activities "in terms of six domains: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." *Briggs*, 248 F.3d at 1237 (quoting 20 C.F.R. § 416.926a(b)(1)(i)-(vi)).

### C.  Evaluation of the ALJ's Decision

The ALJ found that Ashton has not engaged in any substantial gainful activity and that the diagnosis of DiGeorge syndrome constitutes a severe impairment. R. 27. After finding that this impairment did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ evaluated whether Ashton's impairments functionally meet or exceed the listings. The ALJ determined that Ashton has a less than marked limitation in acquiring and using information; no limitation in attending and completing tasks; no limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in caring for oneself; and a less than marked limitation in health and physical well-being. In her opening and supplemental briefs, plaintiff challenges the ALJ's functional assessments with respect to the domains of (1) acquiring and using information, (2) interacting and relating with others, and (3) health and physical well-being. Because the Court finds remand is warranted based on the ALJ's assessment of the first two domains, an analysis of the

ALJ's determinations concerning the domain of health and physical well-being is unnecessary.

The Commissioner's regulations and policy interpretations show that expressive speech is an important component of a child's functional ability in the domains of acquiring and using information and interacting and relating with others.  As to the first domain – acquiring and using information – a child "must . . . be able to use language to think about the world and to understand others and express" himself.  20 C.F.R. § 416.926a(g)(1)(ii).  Thus, older infants and toddlers – age one to age three – "should begin to respond to increasingly complex instructions and questions, and to produce an increasing number of words and grammatically correct simple sentences and questions."  *Id.* § 416.926a(g)(2)(ii).  By age three through age six, children are expected to use "words to ask questions, give answers, follow directions, describe things, explain what [the child] mean[s], and tell stories . . . ."  *Id.* § 416.926a(g)(2)(iii).  The regulation provides the following example of limited functioning in this domain: "you talk only in short, simple sentences and have difficulty explaining what you mean."  *Id.* § 416.926a(g)(3)(v).

Similarly, the regulations concerning interacting and relating with others identify use of language as a fundamental component of age appropriate functioning in that domain.  To interact and relate appropriately, a child "must be able to speak intelligibly and fluently so that others can understand" him.  *Id.* § 416.926a(i)(1)(iii).  For years one to three, the regulations state that a child should be able to spontaneously communicate needs or wishes, "first by using gestures, and eventually by speaking words clearly enough that people who know [the child] can understand" the child most of the time.  *Id.*

§ 416.926a(i)(2)(ii). Words should begin to replace actions for expression as the child matures from three to six years. *Id.* § 416.926a(i)(2)(iii). Two of the examples of functional limitations set forth in the regulations on interacting and relating with others involve problems communicating: "You have difficulty communicating with others . . ."; "You have difficulty speaking intelligibly or with adequate fluency." *Id.* § 416.926a(i)(3)(v)-(vi). The Commissioner's policy interpretation regarding interacting and relating with others further emphasizes the role of communication in evaluating that domain. For example, SSR 09-5p, Title XVI: Determining Childhood Disability-The Functional Equivalence Domain of "Interacting and Relating With Others," 74 Fed. Reg. 7515, 7516-17 (Feb. 17, 2009) (hereinafter "SSR 09-5p"), states:

> The ability to interact and relate with others requires the ability to communicate in an age-appropriate manner. . . . Within age-appropriate expectations, a child must speak clearly enough to be understood, understand the message that another person is communicating, and formulate sentences well enough to convey a message.

Given the important role of oral communication in the domains of acquiring and using information and interacting and relating with others, a child with a significant speech impairment may have functional limitations in both domains. The Commissioner's policy interpretations explicitly recognize this possibility. Specifically, SSR 09-3p, Title XVI: Determining Childhood Disability-The Functional Equivalence Domain of "Acquiring and Using Information," 74 Fed. Reg. 7511, 7513 (Feb. 17, 2009) states that "children who have language impairments often have limitations in both the domains of 'Acquiring and using information' and 'Interacting and relating with others.'" Likewise, SSR 09-5p notes that "learning and thinking also require the ability to communicate, so an impairment(s) affecting communication may cause a limitation that

11

we evaluate in the domain of 'Acquiring and using information' in addition to the domain of 'Interacting and relating with others.'" 74 Fed. Reg. at 7517.  Federal courts have also recognized this synergy.  *See*, *e.g.*, *S.R. ex rel. R.R. v. Barnhart*, 371 F. Supp. 2d 796, 803 (W.D.Va. 2005) ("[A] child's problems with speech and language . . . need to be assessed in both the 'acquiring and using information' domain as well as the 'interacting and relating with others' domain . . . ." (quoting *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 489 (E.D.N.Y.2003))); *McClain v. Barnhart*, 299 F. Supp. 2d 309, 326 n.18 (S.D.N.Y. 2004) ("After the 2000 amendments to the SSA regulations, impairments in expressive language ability are now germane to two domains: acquiring and using information and interacting and relating with others.  Accordingly, the SSA now takes the position that a child with speech-language deficits at the marked level will normally be found to have a marked limitation in the domain of interacting and relating with others, even though socially well-behaved.").

The ALJ's decision does not account adequately for Ashton's communication limitations – including his deficiencies in expressive language skills – in evaluating the domains of acquiring and using information and interacting and relating with others.  As to the first domain, the ALJ's decision does not address a trend shown by record evidence that Ashton's language skills are increasingly lagging behind benchmarks for children of his age.  The ALJ "afforded significant weight," R. 30, to the state agency physician's opinion, which was issued on April 1, 2005, when Ashton was only a little over 8 months old.  *See* R. 197.  The ALJ noted that Ashton had "slightly delayed language skills," referencing the comprehensive evaluation of Ashton when he was 16 months old.  R. 31.  But the ALJ did not reference the findings of the 24 month

evaluation to support his "less than marked" finding in this domain.  The 24 month evaluation assessed Ashton's language skills at the 12 to 18 month level, with his expressive language skills at the low end of that range.  Moreover, the ALJ was unable to consider relevant evidence contained in the 31 month speech/language report, which demonstrates a more dramatic lag, since it was completed after the ALJ issued his decision.

Contrary to the state agency physician's opinion, the evaluations of Ashton's language abilities suggest that he may have marked limitations in more than one domain.  The regulation defining a "marked limitation" provides:

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity . . . . If you have not attained age 3, we will generally find that you have a "marked" limitation if you are functioning at a level that is more than one-half but not more than two-thirds of your chronological age when there are no standard scores from standardized tests in your case record.

20 C.F.R. § 416.926a(e)(2)(i)-(ii).  Based on this definition, Ashton's evaluations at 16, 24 and 31 months assessing his language skills may demonstrate a marked limitation.  This is particularly true with respect to the 31 month evaluation because it would place Ashton's expressive and total language skills in the "more than one-half but not more than two-thirds" level of functioning referenced by the regulation.  *See Krzyzanowski v. Astrue*, No. 08-cv-172, 2009 WL 1941473, *6 (M.D. Fla. July 7, 2009) (holding that three-year old child with expressive communication and total language scores showing a functional equivalence of 22 and 24 months had a marked limitation).

The ALJ's decision also cannot be sustained as to the domain of interacting and relating with others. The decision states that "there are no indications of any limitations in this domain." R. 32. There is no mention in the ALJ's assessment of this domain of Ashton's speech problems, despite citations in the decision to portions of 20 C.F.R. § 416.926a(i), which, as detailed previously, includes many references to speaking and oral communication. Because of the importance of speech to the domain of interacting and relating with others, as demonstrated by the Commissioner's regulations and policy interpretations, the ALJ's apparent failure to consider Ashton's language impairment in this context was error. Here, too, based on the 31 month evaluation, in combination with prior evaluations of Ashton's language abilities, it is possible that he has a marked limitation in the domain of interacting and relating with others.

### III.  CONCLUSION

Because the record on review contains evidence that was not before the ALJ, the Court remands this case to the ALJ to analyze whether Ashton Medina has marked limitations in the domains of acquiring and using information and interacting and relating with others, taking into account the authorities discussed in this Order. Accordingly, it is

**ORDERED** that the Commissioner's final determination that Ashton J. Medina is not disabled under the Act is REVERSED. This case is REMANDED to the Commissioner for additional proceedings in accordance with this Order. It is further

**ORDERED** that plaintiff Felicia M. Perez is awarded her costs. See Fed.R.Civ.P. 54(d)(1); D.C.COLO.LCivR 54.1; 28 U.S.C. § 2412(a)(1).

DATED September 23, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge